Call the next case, please. 11-1996 City Brewing Co. v. Liberty Mutual Fire Insurance Co. May it please the Court. Good morning. Good morning, Your Honors. Dwight Palmer on behalf of City Brewing Co. I'm here on behalf of City Brewing along with my co-counsel. Mr. Palmer, keep your voice up, please. You're in traffic on LaSalle. I'm here on behalf of City Brewing along with my co-counsel, retired Judge Ian Levin, and my associate, Erica Piotrowski. Your Honors, the circuit court should be reversed, and an entry of coverage in favor of City Brewing should be entered for at least three reasons. It's important to understand that the insurance company acknowledges here that we would have coverage except for their exclusions. It's also important to make the point that they agree and do not contest there is only one cause of the property loss here. That one cause of the property loss is hydrogen-induced cracking, is the name of the metallurgical phenomenon that occurred here in these bursting pop-top cans. Didn't they accuse you of only raising that cracking issue fairly late in the game, Counsel? I'm sorry, Your Honor? The cracking issue before it was, you know, corrosion and deterioration. But then I thought I read somewhere in the briefs that they said that you raised that issue of cracking fairly late in the game. Well, we raised it in the circuit court, and it was heard by the circuit court, and they did not complain about that. They went ahead, and in fact, what they did is they made a strategic decision to accept that as the cause so that they could move for summary judgment. And I'm quoting, and I think it's an important quote from their briefs in the circuit court and their briefs here. This is the insurance company making the following statement as to this causation issue. Of course, a fact issue as to the cause of loss could eliminate the possibility of summary judgment. Accordingly, Liberty Mutual does not seek to resolve the issue of causation through either its own motion for summary judgment or through its opposition to City Brewing's cross-motion for summary judgment. To the contrary, Liberty Mutual will assume for the purpose of the competing summary judgment motions that either loss scenario is factually plausible. Then they go on and say hydrogen-induced cracking is City Brewing's contention. And for the purpose of this motion, Liberty Mutual would not contest it. And then on their appeal brief here, Liberty Mutual again concedes the point and states as follows. The factual validity of City Brewing's new theory, hydrogen-induced cracking, was not at issue below, meaning they didn't contest it. It is not at issue here, meaning they're not contesting it. Liberty Mutual reiterates the point here as set out below. The hydrogen-induced cracking is City Brewing's contention. And for the purposes of this motion, Liberty Mutual will not contest it. Counsel, it seems to me that this case turns on the definition of gradual. Yes, Your Honor, it does. And whether or not gradual requires a movement of time and whether or not the definition, the exclusions, you know, which exclude corrosion and deterioration, when there's an indication that it's gradual, that that would bring your client's claim within the confines of the contract. Your Honor, the circuit court, and you're exactly right, Your Honor, the issue is the meaning of the term gradual. Because the exclusion for deterioration is not defined in the insurance contract, other than to say that it is a gradually occurring or gradually developing condition. Gradually developing condition. There's no definition of gradual in the policy. So the key issue is what is the meaning of a gradually developing condition. The Illinois Supreme Court tells us if it's not defined in the insurance contract, that we need to go to the common and ordinary meaning of the term. The Illinois Supreme Court also instructs that the common and ordinary meaning of an insurance policy term that is not defined should be found in dictionaries, case law, treatises. The term gradual, according to the insurance company and the circuit court, means only in steps or stages. And here the cracking up... But need they be slow steps and stages? It certainly should be slow steps and stages because that's the full meaning of the term gradual. The Oxford English Dictionary, the Illinois Supreme Court has contrasted rapid with gradual. Gradual meaning it has a duration, it has a... The heart of the meaning of gradual is it is time dependent. It is slow moving over a long period of time. Slow moving over a long period of time captures the meaning of the term gradual. I didn't really understand when the circuit court said, well gradual just means in steps or stages. When I first heard it, it really took me back. I didn't get it. I didn't understand what the court was saying. And the example was that a mountain, elevation, rises gradually, that is in steps or stages. But the response to that is the mountain was formed gradually over millions of years of time. Gradual there meaning slow moving over a long period of time. The circuit court used a limited definition to forfeit the coverage, which is totally wrong in terms of the insurance policy rules of construction. If there are two reasonable meanings to a term, it's ambiguous. It must be construed in favor of the coverage. Instead, the circuit court construed it in favor of the exclusion and forfeited our coverage, which is just wrong under the law. The circuit court put the burden on city brewing to show that its meaning of gradual was the only meaning of gradual. When in fact, all city brewing needs to show is that it's a reasonable meaning. And in fact, the term gradual has the two components. It has the component idea of in steps or stages. It also has the key component of time. It means slow moving over a long period of time. What happened here happened in the life of an aluminum pop-top can instantaneous. It happened within three weeks, which is extraordinary. There's certainly nothing common or ordinary about defining the term deterioration that appears in a property policy as somehow incorporating this exotic metallurgical phenomenon called hydrogen-induced cracking or stress-corrosion cracking. These are exotic metallurgy terms I had never heard of before until coming to this case. But to say that they should be included within this undefined term deterioration to forfeit coverage on a policy that promises to pay for damage to business property is totally unfair and wrong. What's the best case you have for your position? There is no case, Your Honor. No Illinois case has ever addressed this issue. No, I'm not talking about an Illinois anywhere. Do you have anything? We have a number of California cases. We have a Delaware case that we put in here, Brodkin. But what's the best one? Brodkin? Is that your best case, Brodkin? It may well be, Your Honor. There's a number of California decisions that have reached the issue. It's just that there's not much case law out there. That's why we had to go to California law, because they've just not reached this issue. It's a case of first impression for Illinois, that's for sure. It's just basic insurance law that says, if you can find the coverage reasonably, you must. That, the Illinois Supreme Court is clear to say. And here, there are a legion of authorities in terms of dictionaries, insurance treatises, that say that this deterioration exclusion refers only to gradually, long-term sort of decays. And it's grouped in that group of exclusions. It's grouped with wear and tear and other sorts of terms that have this time concept. Because they acknowledge that the only cause is hydrogen-induced cracking in this case, the court need not reach the stress-corrosion-cracking issue or the faulty workmanship issue. I need you to stop for one second. I don't read this as them giving up the stress-corrosion-cracking. I just don't read it that way at all. You keep saying it, but they seem to say they don't care whether it's hydrogen-cracking or stress-corrosion-cracking or faulty workmanship. You'll lose. That's the position. They don't, to me at least. My reading of this does not mean they've conceded anything at all. Well, Your Honor, the quote is in the record, and the quote is from their brief. I know, but a part, it's a part. You're reading a part of the record and not the entire position of your opponent. I respectfully disagree with you, Your Honor. But in any event, as to the stress-corrosion-cracking, they assert the corrosion exclusion. And here, the stress-corrosion-cracking may be defined either way as a corrosion phenomenon or a cracking phenomenon. And cracking is not corrosion. And it's clear that the expert... But don't all of the experts say that stress-corrosion-cracking is corrosion? Their experts say that it is. Did your experts? Our experts said, no, Your Honor. Our expert is clear to say that it is not corrosion. Our experts are clear to say it is cracking and not corrosion. And there are, we've also cited in the record... Did they say one thing at one time, and then two others came back and then changed their position to cracking? One of them did, Your Honor. That's correct, because they engaged in the scientific method of inquiry. This is not an easy... It is not an easy cause to identify. This is very sophisticated science. The experts that we have, for example, are from national laboratories. And this phenomenon of hydrogen-induced cracking and stress-corrosion-cracking are highly studied, but they are difficult to understand. And when they came on the scene to determine what happened here, they tried to analyze the situation and put the evidence together to reach a conclusion. The early diagnosis of the patient was wrong. They knee-jerked to stress-corrosion-cracking, a corrosion phenomenon, because they misread the evidence. And the evidence... Counsel, what I think Justice Lampkin is saying is that Judge Hyman said that whether it was cracking, corrosion, or deterioration, it didn't really matter, and that the defendant was entitled to summary judgment because all of them were excluded under the policy. Yes, that's... What's your response to that? That's what the circuit court ruled. The circuit court is incorrect because deterioration is gradual, and that's not what happened here. We had a rapid loss, so the deterioration exclusion does not apply to the hydrogen-induced cracking. If it was stress-corrosion-cracking that was the cause, the evidence in the record, including eight independent scientists, state that stress-corrosion-cracking is not corrosion. It is cracking rather than corrosion. It should be classified as cracking and not corrosion, and there's these... Our two experts state that, and there are eight independent scientists that we've quoted in our briefing and was quoted below that testify in their treatises and their papers that stress-corrosion-cracking is best described as a cracking phenomenon, a form of cracking, because cracking is... And the metal fails. They are diametrically opposed to their experts stating that it's corrosion. Finally, Your Honor, the exclusion for faulty workmanship is tied... is hand-in-hand with their stress-corrosion-cracking theory, because the faulty workmanship allegation is that we supposedly left water on the can tops as part of the production, and water on the can tops is critical for stress-corrosion-cracking. Water on the can tops has nothing to do with hydrogen-induced cracking, and they acknowledge that. They're not saying that hydrogen-induced cracking is a form of corrosion. They're arguing that hydrogen-induced cracking is a form of deterioration, so that if there is a dispute on the stress-corrosion-cracking, the faulty workmanship does not provide an independent exclusion. It goes hand-in-hand with their stress-corrosion-cracking theory. And the only evidence in this record, the only testimony in this record, the only admissible evidence in this record is that we did not leave water on the can tops, that the can tops were dry. And that is the testimony of Mr. Peters in here, the Quality Assurance Director for City Brewing, who looked at the line every day. I thought your excerpt said that the water came from the atmosphere. Well, that's not water. It's ordinary humidity. It's not a condensation concept. It's just the fact that in ordinary air, there is a – it's called – well, ordinary air is H2O. Water is air in a vapor form. And it is the H, the monatomic hydrogen, the single hydrogen that will combine with the aluminum that will institute this with the stress of the score line that will initiate the cracking mechanism. So it isn't water or moisture. It's just this free hydrogen ion, this monatomic hydrogen in the air, like the air right here. As opposed to having water down the cans and then dried them off and then stress shrinking them. Yes, sir. Any other questions? Okay. You'll have two minutes rebuttal. Thank you. Thank you. May it please the court, counsel. Good morning. My name is Mark Feinberg. I represent the Appellee-Dependent Liberty Mutual Fire Insurance Company. I'd like to start by responding to some of the questions that were asked. Justice Lamkin asked about isn't it true that they're really not conceding this point about hydrogen embrittlement, but saying they don't care. And that's exactly correct. What we said in the lower court was we don't care if you call it hydrogen embrittlement, whether you call it stress corrosion cracking, or whether you call it faulty workmanship, they're all excluded. And for purposes of the motion, we'll assume that's factually plausible. Another question that was asked, and I believe it was Justice Hall asked the question about didn't this issue of hydrogen embrittlement come up late in the game? And you were right. It did, because the initial view by all of the experts, our expert, Dr. McGarry, their first expert, Dr. Milligan, their second duo of experts, Dr. Jones and Dr. Holroyd, other consultants that Citi Brewing hired right out of the gun to go investigate, Brehm Engineering and Ecolabs, everybody said this is stress corrosion cracking. This is corrosion. Then when we denied the claim on that basis is when the hydrogen embrittlement theory came about. And Drs. Jones and Holroyd changed their view and said, no, it really isn't corrosion, it's hydrogen embrittlement. And we have set out in the... Another name for cracking. Pardon me? Another name for cracking. Hydrogen embrittlement, yes. We don't dispute that hydrogen embrittlement, as they claim in this case, is humidity acting on these cans, causing cracking, which ultimately causes the cans to fail. So everybody at the beginning said it's corrosion. Then they came back with the hydrogen embrittlement. And what's set forth in some detail in the briefing is the testimony of their experts, who I think we used the phrase basically tie themselves in semantic knots, trying to say now it's hydrogen embrittlement, it's not corrosion. Justice Hall, you were also correct when you said this case is about, from the standpoint of deterioration, what does gradual mean? And the case law and the dictionary say that gradual means changing in steps or grades, changing by degrees. There's no temporal requirement in that definition. And there is no temporal requirement in any of the decisions that have looked at the question of what does gradual mean. Now, they have taken the position that gradual has to involve some time. It has to be slow moving. And there are cases that say it can be slow moving, but they morph that into over a long period of time. And there's no case that says that, that it has to be over a long period of time. Some of the cases certainly talk about situations that took a year or two years, but that's just actually what happened. There's no requirement that says this has to be over a long period of time. And here's an example. Counsel, if one reasonable person says that gradual means a long period of time and another one says that it's just incremental steps, doesn't that indicate that there's an ambiguity there? And when there is an ambiguity, they say the test is what a reasonable person, you know, of the insured, in the position of the insured, would understand that to mean. And it seems to me that you would have a problem here. If there is an inherent ambiguity, then the court's decision would be called into question. If there is an ambiguity, then I agree that Illinois law says that's going to be construed against the insured. But in order to have an ambiguity, you have to have two reasonable interpretations of the language. And the interpretation of the language that says it takes a long time is not reasonable in light of the definitions and in light of the case law. It's not reasonable to say it takes a long time. It's not reasonable for John Q. Doe to say that gradual means it takes a long time, as a reasonable person. I don't believe so based on what the case law has said, because that's a question of law. Your Honor, the example I wanted to use was, let's assume we have an aluminum can like this. And the effect of the deterioration, because it's very thin, and because you maybe have a high humidity level, it fails in a certain period of time. And then you have a piece of steel, and humidity level is much greater, but it takes more time. Is one gradual and one not? If we had these cans here that were subjected to much more humidity, so that they failed sooner, or that they were... These cans popped in three weeks. Yes. Which is another good point. We've never had any explanation as to why they popped in three weeks. And if it's because of the humidity in La Crosse, Wisconsin, why weren't cans popping all over Wisconsin? So I understand that they popped in three weeks, but under the circumstances where you had this aluminum, and you had humidity, which is a natural cause, and the cases... I don't think we have any dispute about the fact that deterioration is the weakening of an object, gradual weakening of an object from natural causes. That's deterioration. That's what happened to these cans. I want to touch on corrosion just a bit. And I think I've outlined what the experts have said about corrosion. They've now come and said, well, it's not corrosion. It's cracking. It's stress-corrosion cracking. And they say that stress-corrosion cracking is not really corrosion. We have one case that we've cited in our brief, the Metropolitan Waste case, where the court said that the plaintiffs can't emphasize stress in stress-corrosion to avoid the corrosion exclusion. There's two other cases on corrosion that we've cited. The Adams-Arapaho case, the Colorado case, that says corrosion means all corrosion, however caused. Doesn't matter how fast it occurs. And the Arkwright Insurance versus Wausau paper cases did the same result. There are two issues I want to quickly address on faulty workmanship. One is the claim in their brief that because the language says loss attributable to faulty, defective, or inadequate construction, workmanship, or material, it's limited only to buildings. It wouldn't apply to products. And the circuit court found that in that exclusion, exclusion 13, while A talks about construction, workmanship, or material, subsection D talks about developing, surveying, or citing of buildings or structures. And the court found applying rules of construction that the insurance company knew how to say buildings and how to limit something to buildings when it wanted to. And it didn't do that in A. So A doesn't apply to buildings. So then, Sidney Brewing says, well, the General Mills case should control. And in the General Mills case, the policy had language that excluded errors in design, faulty workmanship, or faulty materials. That's all the exclusion said. And the court there said it was a reasonable interpretation that by grouping This was a case that held it would apply only to construction. But they did it because of the specific wording of that exclusion. And that's why that case is distinguishable. And then I just want to briefly touch on our argument in our brief that they have raised their ensuing loss argument for the first time on appeal. The ensuing loss clause says it's tucked at the end of the exclusions. And it says we exclude deterioration, we exclude corrosion. Except if a covered loss ensues, we will cover that loss. And a covered loss is defined as a peril. So in other words, for the ensuing loss clause to apply, you have to have an event that's excluded, damage that's excluded, that causes or results in a non-excluded loss. And then you can get coverage for the non-excluded loss. What we have here is that they initially said in the trial court, okay, if this is excluded for some reason, we have an ensuing loss because the cans were damaged and the contents are the ensuing loss. And the trial court judge Hyman said, no, no, no. That's all one loss. Now what they're saying is, no, what we have here is a loss of the cans and the bursting is the excluded loss. And everything that happens after that, that this stuff gets on some of the cans and you can't use them, that's the ensuing loss. And we say, well, wait a minute, you can't do that now. You can't bring that up on appeal for the first time that you're changing what it is that you're asking for in your theory. And they cite a case, the Clark case in their brief, that is a wrongful birth case. And it's a fairly long decision, but the gist of it is that the plaintiffs claimed emotional distress from the wrongful birth of a very, very sick and disabled child. And on appeal, because they were afraid they were going to get knocked out on emotional distress, they claimed that they were direct victims of the wrongful birth and they should not be held to the zone of danger requirement in order to recover for emotional distress. And the defendants argued, well, wait a minute, you didn't make that direct victims argument before on appeal. You're making it here before in the trial court. You're making it here for the first time. And the court said, well, there, the court said they properly preserved the emotional distress claim so they could make the alternative argument here. They're still seeking emotional distress. There's no change. That's not our case. They're seeking a much different, greater damage in their ensuing loss claim. And they're now claiming, no, it just wasn't the cans that opened. It's every can that was on this pallet. It's all the cardboard. It's all the shrink-wrapped. So we don't believe that their case applies, and we think they ought not be allowed to bring that claim now. And for all of these reasons, we'd ask that the decision of the circuit court be deferred. Thank you, Counsel. Thank you. Thank you, Your Honor. Two minutes, Counsel. Justice Gordon, your question, what are our best cases? It's at page 16 of our opening brief. It's the Berry decision and the Jardine decision. How about counsel's last argument, that which you did not bring up before the trial? If we hadn't brought it up, no, you couldn't. But we did bring it up. And it was plain, and it was briefed. And it's the ensuing loss. It's only necessary to get to that ensuing loss issue if none of the – there's no coverage of the issue. So if the court would rule against this and deterioration and rule against this on stress, corrosion, cracking, and faulty workmanship, then the court would need to get to the ensuing loss. We certainly raised it, and the circuit court heard argument on the ensuing loss. But your argument is based that you should have had summary judgment, not them. Yes, sir. Is that what you're telling us? Yes, sir. Are there any factual issues here? No, sir. Okay. You agree that there are no factual issues. On the issue of coverage for hydrogen-induced cracking, there are no fact issues. On the stress, corrosion, and cracking, there are authorities colliding there, but it just demonstrates ambiguity of that exclusion. Because there are authorities that say that it's cracking. There are authorities that say that it's corrosion. That demonstrates an ambiguity in the exclusion for corrosion, which requires a finding of coverage there as well. Okay. One comment about our experts. No one's perfect. They struggled with this. What they came up with is the explanation of hydrogen-induced cracking as the cause. It is the most reasonable explanation of the evidence, and it's demonstrated at page 11 of our reply brief as well as our opening brief. Their opinion that it was hydrogen-induced cracking here explains that the evidence is documented in six points. I won't go into it further with the court. It's there. It's available. It's simply that that explanation best explains what happened to Poor City Brewing. They had never seen it before. We were startled by it. It was a devastating loss for them. It nearly crushed the poor company. Your Honors, we ask that this court please reverse the circuit court and enter summary judgment in favor of City Brewing on coverage and remand for determination of the amount of the city's damages. Thank you. Thank you, counsel. These matters will be taken under advisement. This court is adjourned.